IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| VS. | * | CRIMINAL NO. L-05-70 |
| ERNEST GONZALEZ | * | |

<u>MEMORANDUM AND ORDER</u>

Pending is Defendant's motion to withdraw his guilty plea (Docket No. 84). On May 23, 2005, the Defendant entered a plea of guilty to Count One of an indictment charging conspiracy to possess with intent to distribute more than 1,000 kilograms of marihuana (Docket No. 60). A transcript of the lengthy Rule 11 proceeding was filed on October 5, 2005 (Docket No. 85). In connection with the guilty plea, Defendant signed and swore to a Plea Agreement (Docket No. 70). He also signed a fact statement which recited that the facts therein were "true and correct" (Docket No. 71). The Defendant was also placed under oath during the extensive Rule 11 proceeding.

A request to withdraw a guilty plea, formerly covered by Rule 32 (e), Fed. R. Crim. P., is now controlled by Rule 11(d). That rule provides that a defendant wishing to withdraw his plea after it has been accepted by the Court, but before sentence, may do so if he can show "a fair and just reason." This Court is directed to consider seven factors in deciding such a motion: whether defendant asserts his innocence, whether withdrawal would prejudice

the Government, whether the defendant delayed in filing the motion, whether withdrawal would inconvenience the court, whether adequate assistance of counsel is available, whether the plea was knowing and voluntary, and whether withdrawal would waste judicial resources.  United States v. Adam, 296 F.3d 327 (5th Cir. 2002).

In March 2005, attorney Eduardo Jaime was appointed to represent this Defendant (Docket No. 32).  The next month, the Court granted a motion to substitute retained attorney David Almaraz (Docket No. 50).  In the pending motion, Defendant alleges that he "asserted his innocence by requesting a jury trial" but that he was "talked into" pleading guilty by attorney Almaraz after his family was unable to pay Almaraz "additional attorney's fees."  That allegation is somewhat disingenuous.  In this Court's long experience, virtually every defendant initially pleads not guilty to the indictment.  Such a plea is not necessarily a protestation of innocence but rather a demand that the Government prove the charges.  Moreover, the initial plea enables the Defendant to obtain discovery and otherwise prepare for trial or engage in plea negotiations.  Under this Court's long-standing practice, all pending criminal cases are set for a final pretrial conference, which is where the Defendant states whether he still wishes a trial. At no time during the lengthy Rule 11 proceeding did this Defendant ever hint at a claim of innocence.  Instead he agreed orally and in writing to facts overwhelmingly establishing his

guilt.  Parenthetically, co-Defendant Carlos Chapa had earlier and independently stipulated to similar facts establishing this Defendant's guilt (Docket No. 66).

Defendant's most egregious argument is that he was misled into pleading guilty because his attorney supposedly advised that if Defendant cooperated, the Government would withdraw the enhancement and he would then "be looking at" approximately six years' confinement.  He implicitly admits that at the time of the plea, he was given very different information by the Court, but now claims to have been "in shock" and told to stay quiet.  It should first be noted that this Defendant was 35 years old at the time of his guilty plea.  He was married, with three teenage children, and an eleventh-grade education.  Moreover, he is not unfamiliar with the criminal justice system.  He has a 1988 felony conviction for burglary of a habitation, a 1991 felony conviction for delivery of a controlled substance, a 2001 felony conviction for possession of marihuana, and a misdemeanor DWI conviction.  In the sworn Plea Agreement, Page 2, in bold print with some solid caps, the Government recommendation is that Defendant be sentenced to a minimum, mandatory term of life in prison.  Paragraph 3 of the Agreement reflects that Defendant was facing a mandatory, minimum sentence of ten years in prison but after two felony drug convictions, was facing life in prison.  The Court discussed this situation with the Defendant in great detail at the Rule 11

proceeding.  See, e.g., TR. 10-14, 18-19.  At one point, the Court even acknowledged that it was "being repetitious" because the information was "so important."  (TR. 21).  Essentially, the Court repeatedly advised the Defendant that he was facing a minimum sentence of either ten years or life and that his only source of relief would be a substantial assistance motion.  The Defendant was pointedly advised that the filing of such a motion was within the sole discretion of the Government.  (TR. 20-21)  Defendant answered in the affirmative when specifically asked if the plea agreement had been correctly explained to him.  (TR. 23-24).  The Court then asked the Defendant if he had been promised "anything different" or "anything better" than what had been discussed in open Court.  Defendant answered in the negative.  (TR. 24).  The Court then elaborated by specifically asking if anyone, including "the prosecuting lawyer, the DEA, your own lawyer, some other person has told you if you'll just be quiet something else has already been fixed up for you to get some kind of benefit or reward."  (TR. 24).  Again, the Defendant answered in the negative.  (TR. 25).

In sum, the Defendant makes no colorable claim of innocence apart from his recent affidavit that he "always wanted to go to trial because I wanted to prove that I was working as an informant when the drugs...were seized."  This lame assertion pales in comparison with Defendant's earlier detailed admission of guilt, corroborated by the co-Defendant.  The events in question occurred

4

in March 2004, almost two years ago. A trial of the case at this late stage would be a waste of judicial resources in this extremely overburdened Division. The Court is absolutely convinced that Defendant's guilty plea was entered freely and voluntarily and the filed transcript will demonstrate how thoroughly this Court endeavored to insure that the Defendant understood what he was doing and the consequences of his plea. At the time of his plea, Defendant was represented by one of the most experienced and capable criminal defense lawyers in this area. It is true that the attorney later sought to withdraw because of a financial dispute, but that motion was filed on August 10, 2005 (Docket No. 74) almost three months after the Rule 11 proceedings. It is farfetched to suggest that this financial quarrel somehow forced the Defendant to plead guilty in May. In that regard, Defendant under oath stated that his guilty plea was entered freely and voluntarily. (TR. 9).

For all the foregoing reasons, the motion to withdraw the plea is DENIED.

DONE at Laredo, Texas, this 5th day of January, 2006.

*George P. Kazen*
United States District Judge